IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMANDA MASON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACT. NO. 1:19-cv-00703-ECM |
| v. | ) | (WO) |
| | ) | |
| RUSKIN COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

## I.  INTRODUCTION

Amanda Mason ("Mason" or "Plaintiff") seeks compensatory and punitive damages and injunctive relief pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), and 42 U.S.C. § 1981 against Ruskin Company ("Ruskin" or "Defendant").  The Plaintiff alleges the Defendant treated her less favorably based on her race in regard to promotions and informal training opportunities.  Currently pending before the Court is the Defendant's motion for summary. (Doc. 19).  After carefully reviewing the Defendant's motion for summary judgment, the Plaintiff's response thereto, and the evidentiary materials, the Court concludes that the motion is due to be GRANTED.

## II.  JURISDICTION

The Court exercises subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §§ 1331.  Personal jurisdiction and venue are uncontested.

## III.  LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting FED. R. CIV. P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.*  The burden then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

## IV.    FACTS

Amanda Mason is an African American woman who has worked at Ruskin's or its successors' Geneva Alabama facility since 1993.  The facility assembles components used

in HVAC systems.  Mason worked in several departments as an assembler before she was transferred to Department 6 in approximately 2013. (Doc. 20 at 6).

 In August 2018, a Department 6 lead person position became available.  (*Id.* at 7). A lead person is responsible for "assign[ing] resources in departments in order to meet daily production needs." (Doc. 21-8 at 23).   The opening was posted on internal company bulletin boards so interested employees could apply.   Following the process for consideration for internal job postings, Mason called Human Resources and expressed interest in the job. (Doc. 20 at 7).  This was the first promotion for which Mason applied. (*Id.* at 8).

 Once an applicant expresses interest in a position, Human Resources Business Partner Crystal Sizemore would review the candidate's attendance and discipline history before adding the applicant to a list of candidates. (*Id.* at 8).  Sizemore would then work with department supervisors to create a list of questions about the job and the skills needed. (*Id*. at 9).  For the 2018 lead person job, Sizemore worked with the departing Department 6 supervisor, Terry Harrison ("Harrison"), to develop a questionnaire.  The questionnaire was distributed to thirteen candidates who had applied for the lead person job. (Doc. 23 at 10).

 Mason completed the questionnaire.  In response to the directive to "[l]ist any applicable classes or training that you have received that you believe has prepared you for the position," Mason answered,

> [w]hile working, I have grown and matured.  While working here for 25 years, I have received training and experience in several departments.  I have received ISO certification (lean

> manufacturing) while being employed here, complete daily reports, and filed (sic) out absentee slips in the previous (sic) I worked in. Also, each year in February at Troy University I attend the leadership conference; this conference is very diverse and intellectual.

(Doc. 20 at 9).

Kimberly Campbell, a white woman, saw the lead person job posting and also applied. Campbell had worked for Ruskin since 1999 and had worked as lead person in two other departments for several years before applying for the Department 6 job. (*Id.* at 10). In her response to the question about "training that you have received that you believe has prepared you for the position," Campbell answered, "I have had many years of on the job training, working as a lead person in multiple departments. I have inventory, MacPac, and shipping on the Job training. I have HPT, and ISO training." (*Id.* at 11).

Harrison and Department 6 Assistant Supervisor Hannah McKee ("McKee") conducted interviews in October 2018. (*Id*. at 13). Mason's interview was informal, and Harrison and McKee "laugh[ed] a lot and ma[de] jokes." (Docs. 20 at 13; 23 at 12).

After all the interviews were conducted, Harrison and McKee narrowed the pool of candidates to three employees: Kimberly Campbell, Natalie Gilbert, and Amanda Mason. (Docs. 20 at 14; 23 at 14). Gilbert was removed from consideration because of her attendance record, so the final decision came down to Campbell and Mason. (Doc. 23 at 14). Because Harrison would be moving permanently to another department, McKee explained, "I would be left by myself and [ ] need to have somebody with lead experience." (Doc. 21-8 at 11). Harrison similarly noted that he and McKee discussed Campbell's previous experience as a lead person and the similarities in responsibilities of Department

4

21 and Department 6 which Harrison "thought was a pretty big issue." (Doc. 21-5 at 17). He further noted, "we needed someone that if she [McKee] was out, that had experience, if they had any in MacPac, which . . . controls everything." (*Id.* at 12).

On November 5, 2018, McKee notified Crystal Sizemore of the decision to choose Kimberly Campbell. (Doc. 21-8 at 32).  Alex Dowling, the plant manager and ultimate decision maker, approved the promotion. (Doc. 23 at 15, 17).   Before Dowling communicated his approval, McKee heard that Campbell's supervisor, Kenneth Taylor, told her that she had been selected for the promotion. (*Id.* at 15–16).  The same day, McKee sent an instant message to Dowling saying, "I am guessing that my choice for lead person got approved since Kenneth already told her???" (Doc. 21-8 at 32).  On November 6, 2018, McKee told Mason that she had not been chosen for the lead person position and that Campbell had been chosen instead. (Doc. 23 at 17).

On December 3, 2018, Mason filed her charge with the Equal Employment Opportunity Commission ("EEOC"), and she received a right to sue letter on June 25, 2019. (Doc 21-1 at 93).

In June of 2019, Campbell resigned from the Department 6 lead person position. (Docs. 20 at 15; 23 at 19).  The lead person role was posted, and Mason again applied for the job. (*Id.*).  Four employees, including Harrison, interviewed Mason. (Doc. 20 at 15). Mason was selected for the position and continues to work as the lead person today. (*Id.*).

On September 23, 2019, Mason sued Ruskin Company for race discrimination under Title VII and § 1981.  (Doc. 1).

## V.   DISCUSSION

The Defendant argues that summary judgement should be granted because the Plaintiff cannot provide evidentiary support for either her failure to promote or her failure to train claims.  First, the Defendant argues that the Plaintiff cannot prevail on her failure to promote claim because the candidate who was promoted was better qualified than the Plaintiff.  And the Defendant argues that the Plaintiff cannot prevail on her failure to train claim because she fails to identify an adverse employment action.  The Defendant further asserts that both claims fail because the Plaintiff does not present a triable claim for race discrimination. The Plaintiff responds that there are issues of material fact for both claims, so the motion for summary judgement should be denied in its entirety.

Title VII and § 1981 race discrimination claims are analyzed under the same standard so the Court considers the claims together.  *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1217 (11th Cir. 2019).  Because the Plaintiff relies on circumstantial evidence, the Title VII and § 1981 failure to promote and failure to train claims will be evaluated under the *McDonnell Douglas* burden shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  To satisfy the initial burden under this framework, the plaintiff must demonstrate a *prima facie* case of discrimination. (*Id*.).  Establishing the *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee and "a required conclusion [of discrimination] in the absence of [an] explanation." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993); *see also Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Once the plaintiff has established a *prima facie* case, the burden then shifts to the defendant to

produce a legitimate non-discriminatory reason for the employment action. *St. Mary's Honor Ctr.*, 509 U.S. at 507.  This is a burden of production, not persuasion.  So upon producing evidence of a legitimate non-discriminatory reason, the presumption in favor of the plaintiff is rebutted and falls away. *Burdine*, 450 U.S. at 255.  After the defendant provides a legitimate non-discriminatory reason, the burden then shifts back to the Plaintiff to show that the defendant's explanation is pretextual. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000).  A plaintiff can show pretext by "directly persuading the court that a discriminatory reason more likely motivated the employer" or indirectly that the employer's explanation is not believable. *Burdine*, 450 U.S. at 256 (1981).  At all times, the ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated against the plaintiff. *St. Mary's Honor Ctr.*, 509 U.S. at 507.

Nevertheless, the Eleventh Circuit has recognized, "establishing the elements of the *McDonald Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  Instead, a plaintiff will survive summary judgment by presenting "circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id*.

To determine whether the motion for summary judgment should be granted, the Court begins with the Plaintiff's failure to promote claim followed by a consideration of her failure to train claim.

## A. Failure to Promote Claim

The Defendant argues that the Plaintiff's failure to promote claim fails because she cannot make out a *prima facie* case for racial discrimination, and alternatively, the Defendant had a legitimate non-discriminatory reason for not promoting her in 2018. In response, the Plaintiff argues that she can make out a *prima facie* case for discrimination and also show that the Defendant's legitimate non-discriminatory reason is pretext for race discrimination. The Plaintiff argues in the alternative that if she cannot make out a *prima facie* case, she presents a convincing mosaic of circumstantial evidence to show racial bias.

### 1. McDonald Douglas *burden shifting framework*

#### a. *Prima facie* Stage

To establish a *prima facie* case for her failure to promote claim, Mason must show: (1) she belongs to a protected class; (2) she was qualified for and applied for a promotion; (3) despite her qualifications, she was rejected; and (4) the position was filled with an individual outside of the protected class. *Walker v. Mortham*, 158 F.3d 1177, 1186–87 (11th Cir. 1998).[1] The Parties do not dispute that the Plaintiff is able to satisfy the first three prongs of the *prima facie* stage. And because the position was filled by Campbell— a white person—the Plaintiff fulfills the fourth prong as well. Therefore, the Plaintiff has satisfied the *prima facie* case.

---

[1] In *Walker v. Mortham*, 158 F.3d 1177, 1186–87 (11th Cir. 1998), the Eleventh Circuit panel comprehensively discussed the circuit split regarding what is required at the *prima facie* stage for a failure to promote claim. There, the Court concluded based on "the earliest case principal" that the Court should follow *Crawford v. Western Electric Co. Inc.*, 614 F.2d 1300, 1315 (5th Cir. 1980), which required plaintiffs only to show that the position was filled by someone outside of their protective class.

### b.  Defendant's Legitimate Non-discriminatory Reason

To satisfy its burden of production, the Defendant must produce a legitimate non-discriminatory reason for the employment action. *St. Mary's Honor Ctr.*, 509 U.S. at 507. The Defendant's legitimate non-discriminatory reason for not promoting the Plaintiff is that Campbell was better qualified. (Doc. 20 at 20–21).  The Defendant explains that it chose Campbell over the Plaintiff for the position because of her previous experience as a lead person.  This was particularly important in Department 6 because McKee would need help running the department. (*Id*. at 22).  The Defendant further asserts that Campbell's experience with the MacPac computer system was noteworthy as it could be helpful.  The Plaintiff concedes that the "Defendant has met its burden at this stage." (Doc. 23 at 28).  Therefore, the Defendant has provided evidence of a legitimate non-discriminatory reason for not promoting the Plaintiff.  Because of this, the Defendant has satisfied its burden of production, and the burden shifts to the Plaintiff.

### c.  The Plaintiff's burden to show pretext

The Plaintiff argues that the Defendant's reasons for not promoting her are not worthy of credence for several reasons.  First, the Plaintiff argues that the Defendant's pointing to Campbell's MacPac experience as a reason she was promoted instead of Mason is pretextual because MacPac is not required or used by a lead person. (Doc. 23 at 29).  The Plaintiff also argues that there were several irregularities with the promotion process which calls into question the legitimacy of the decision itself.  And finally, the Plaintiff argues that she was more qualified than Campbell for the lead person position.

To survive summary judgment, the Plaintiff must show that the Defendant's proffered non-discriminatory reason for disparate treatment is pretextual. Black's Law Dictionary defines pretext as "[a] false or weak reason or motive advanced to hide the actual or strong reason or motive." *Pretext*, BLACK'S LAW DICTIONARY (11th ed. 2019). A plaintiff successfully shows pretext either "by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256. A court determines whether the plaintiff has established pretext by considering "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). But a reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993) (emphasis in original). Because the burden of persuasion always lies with the Plaintiff, she must show that the Defendant's stated reasons are false and that they hide the actual discriminatory reason for the promotion. So to determine if the Defendant's proffered reasons for the employment decision are pretext, the Court will consider each of the Plaintiff's arguments for pretext.

## I.  MacPac experience

The Plaintiff asserts that the Defendant's emphasis on Campbell's MacPac experience as a factor in its 2018 decision is pretext because using MacPac is a responsibility of the clerk—not the lead person. (Doc. 23 at 29). The Plaintiff further notes

that even after her promotion in 2019 to lead person, she has received no training in using MacPac and has had no need to use it. (*Id.*).  She argues that the emphasis on MacPac was an after-the-fact justification for the Defendant's choice because it was something that clearly distinguished the two candidates. (*Id*. at 30).  The Plaintiff explains, "[i]f Harrison really wanted a candidate who could 'immediately work at full speed' and 'hit the ground running' in the new job, a reasonable jury could find that it was illogical to pick a candidate based on past experience in a task that was not a part of the candidate's future job duties." (*Id*.).

The Defendant replies that the Plaintiff's focus on MacPac experience does not meet the proffered reasons head on and rebut them because the Defendant does not highlight Campbell's MacPac experience as a reason for the employment decision.  By making this argument, the Defendant posits, the Plaintiff effectively switches the reason Defendant gives for promoting Campbell and then claims that reason is pretextual.  The Defendant reminds the Court that the "critical determining factor" for promoting Campbell was her past lead person experience. (Doc. 25 at 5).  The Plaintiff argues that Campbell's MacPac experience was the proffered reason for the promotion; however, this assertion is not supported by the record.  And neither is the Plaintiff's argument that MacPac is completely irrelevant or not helpful—MacPac is the computer system that runs the entire factory. (*Id.* at 7).  This recasting of the employer's stated reason, the Defendant argues, is insufficient to show pretext. (*Id*. at 6).

A showing of pretext essentially is that "the employer's non-discriminatory reason should not be believed, or, when considering all the evidence, that it is more likely that the

discriminatory reasons motivated the decision than the employer's proffered reasons." *Lawver v. Hillcrest Hospice, Inc.*, 300 F. App'x 768, 772 (11th Cir. 2008) (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir.1998). However, to show pretext, the Eleventh Circuit has explained that "[a] plaintiff is not allowed to recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000). Instead, a plaintiff is required to "meet that reason head on and rebut it." *Id*.

Here, the Plaintiff has not met the Defendant's proffered reason head on. Nor has the Plaintiff shown that the actual reason for the employment action was race discrimination. The Plaintiff argues that the Defendant's alleged emphasis on Campbell's MacPac experience is unworthy of credence because MacPac is not a relevant or necessary skill for a lead person. However, as the Defendant explains, MacPac was not the exclusive or most important factor, or for that matter, the reason proffered by the Defendant in making its employment decision. Both Harrison and McKee testified to the importance of Campbell's past lead person experience in making their promotion decision. When asked about the pros and cons of Campbell's candidacy for the position, McKee replied "the only one specific is that she was the only one out of the three that was a lead person . . . ." (Doc. 21-8 at 11). Harrison similarly noted that he and McKee spoke about Campbell's prior lead experience, and it was a "pretty big issue" that her experience in Department 21 would lend itself to fulfillment of responsibilities in Department 6. (Doc. 21-5 at 17). Because the Plaintiff cannot recast the Defendant's proffered reason for the employment decision,

the Plaintiff's argument that MacPac was the exclusive or most important reason for the Defendant's decision is not demonstrative of pretext.

Nevertheless, Harrison did note that MacPac experience was a factor in his decision. (Doc. 21-5 at 12, 18).  But this does not show pretext either.  Although using MacPac customarily lies with the clerk and the lead person does not regularly use the system, (*id.* at 17), it is not an obscure program.  According to Harrison, it is "our big thing around here, it controls our inventory, it controls our orders, it controls everything . . . ." (*Id.* at 12). The Plaintiff even testified in her deposition that she had used the MacPac system as a lead person—although not within the last month—to look up orders. (Doc. 21-1 at 16).  Even assuming MacPac was a factor in the promotion decision, Campbell's lead person and MacPac experience were not mutually exclusive reasons for her promotion.  And as Harrison explained, in light of his transfer to a different department, MacPac experience was an additional strength of Campbell's because she would be able to assist McKee if the clerk was out. (Doc. 21-5 at 18).  The Plaintiff's arguments about MacPac do not show that the Defendant's reasons "should not be believed, or, when considering all the evidence, that it is more likely that the discriminatory reasons motivated the decision . . . ." *Lawver*, 300 F. App'x at 772.

## II.     Circumstances surrounding the promotion decision

The Plaintiff also argues that there were "a number of irregularities" in the hiring process that, taken together, could allow a reasonable jury to conclude that a discriminatory reason motivated the Defendant's decision. (Doc. 23 at 31).  To support her position that these irregularities show pretext, the Plaintiff points to Eleventh Circuit precedent that

circumstantial evidence of discrimination can be shown if "established rules were bent or broken to give a non-minority applicant an edge in the hiring process." *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998).  The Plaintiff argues that these irregularities undermine the legitimacy of the selection process and demonstrate that Campbell was the preselected candidate all along. (Doc. 23 at 31).  The Defendant replies that the "hodgepodge of 'circumstances surrounding the promotion'" are "conjecture and speculation of conspiracy" that do not create a triable issue of fact as to whether the Defendant's stated reasons are pretextual.  (Doc. 25 at 9).   The Plaintiff identifies four alleged irregularities in the hiring process.  To determine whether any of them show discrimination, the Court will evaluate each of them individually.

i.   Harrison's not providing a written explanation of his decision

First, the Plaintiff posits that Harrison's not providing a written explanation for why Campbell was chosen—in contrast to previous promotions—"leaves open a number of possible inferences relevant to a finding of pretext." (Doc. 23 at 32).  Namely, this selection paragraph could have reiterated the MacPac rationale or articulated a completely new rationale for the promotion decision. (*Id*.).   In response, the Defendant explains that Harrison was not required by any policy to submit a written justification, and that Sizemore had testified that although she usually asked for information about employment decisions, "those reasons were sometimes communicated verbally." (Doc. 25 at 9).

The Plaintiff does not show that Harrison's failure to submit a written explanation of his decision to promote Campbell demonstrates pretext for race discrimination.  As an

14

initial matter, the Plaintiff points to no Ruskin policy that required Harrison to submit his recommendation in writing. (Doc. 25 at 10).   Although both Harrison and Sizemore explained that there was an expectation that decision makers would articulate the reasons for an employment decision in writing, (docs. 21-5 at 12; 21-4 at 1), the fact that no explanation was provided in this case is not evidence "*both* that the reason was false, *and* that discrimination was the real reason*" as is required to prove pretext. *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (emphasis in original).   Although the Plaintiff argues that a written explanation could reiterate MacPac experience as a reason, which the Court has already noted would not be indicative alone of discrimination, or articulate some new reason, the Court is only required to interpret all reasonable inferences in favor of the Plaintiff—not inferences based "on speculation and conjecture." *McAboy v. Westervelt Co., Inc.*, 2018 WL 6504511, at *8 (N.D. Ala. Dec. 11, 2018).   And the argument that a written explanation of the promotion decision would reveal some alternative explanation not already before the Court falls squarely on the speculation or conjecture side of the line.

ii.      Difference in interviews

Second, the Plaintiff notes that her two interviews were substantially different.   In contrast to her second—and successful—interview for lead person, the first interview was relaxed, and McKee and Harrison were making jokes.   She argues that her first interview was so informal because the successful candidate (Campbell) had already been chosen.

(Doc. 23 at 32).[2]  The Defendant states that the questions were the same for all candidates and points out that many of her interviewers were different in the second interview, so it was unsurprising that that the interview had a different atmosphere. (Doc. 25 at 10).

This too does not demonstrate that the Defendant's proffered reason for its employment decision was pretext for intentional race discrimination.   An interviewer's demonstrated disinterest in a candidate is not necessarily evidence of discrimination. *Lacey v. Alabama Dep't of Conservation & Nat. Res.*, 2015 WL 2030413, at *4 (M.D. Ala. May 1, 2015) (finding that an interviewer dozing off in an interview does not "persuad[e] the court that a discriminatory reason more likely motivated the employer or [show] that the employer's proffered explanation is unworthy of credence.").   Although the Plaintiff's interviews might have been different, the Plaintiff here has not provided evidence that her 2018 interview differed from Campbell's interview or that of any other white candidate.

---

[2] The Plaintiff speculates that her casual first interview and the fact that the promotion decision leaked before McKee had an opportunity to tell everyone supports that Campbell was preselected.  But the only evidence submitted that could directly support preselection is a declaration from one of the Plaintiff's coworkers, Cindy Jones, that she heard about the selection process. (Doc. 24-2). In her declaration, Jones stated, "I remember hearing that Kimberly Campbell was getting the lead person job in Department 6 before the job was officially posted." (*Id.*).   However, before the Court can consider the declaration, the Court must determine whether the hearsay statement can be considered at the summary judgment stage.   The Eleventh Circuit has explained, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) (internal quotations omitted). The most obvious means of doing this would be to have the hearsay declarant testify in court. *Id.*  However, the hearsay statement upon which Jones' declaration is based would not be reducible to admissible form because it is based on the statements of an unknown declarant. *See Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir.1996) ("There is nothing to indicate that . . .  [the] statements (which were based on the statements of unknown co-workers) will lead to admissible evidence)." And as the Eleventh Circuit has further explained, "[t]he possibility that unknown witnesses will emerge to provide testimony on this point is insufficient to establish that the hearsay statement could be reduced to admissible evidence at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012).  Because there is no evidence of the identity of the hearsay declarant, the Court gives no evidentiary weight to Jones' testimony that she heard Campbell had been pre-selected for the position.

Nor has the Plaintiff presented evidence to show that the Defendant's reasons for choosing Campbell, namely that she had previous lead person experience, were pretext for race discrimination. (*See id.*).

            iii.    Unofficial disclosure of the employment decision to Campbell

Third, the Plaintiff argues that the "unofficial disclosure of Campbell's selection" before any official announcement "fit[s] neatly into a pattern of company actions that seem to be taken by Caucasian management to the benefit of Caucasian employees." (Doc. 23 at 33). Although the Plaintiff recognizes that any unofficial disclosure did not violate "any company rule or procedure" and all those who performed the interviews deny sharing the selection prior to an official disclosure, the Plaintiff argues that the unofficial disclosure is indicative of "Caucasian men decid[ing] who they wanted to promote prior to the interviews," which is consistent with previous promotion decisions. (*Id.* at 33–34). In response, the Defendant explains that the announcement only shows that Campbell's supervisor announced the selection before McKee and nothing more. (Doc. 25 at 12–13).

The fact that the promotion decision was announced informally before McKee had the opportunity to tell the candidates in her desired manner does not show that the Defendant's proffered reason for its employment decision is not to be believed. When Crystal Sizemore from Human Resources was asked if promotion decisions were leaked in the factory before the official announcement, she answered, "[y]es, in a few cases, yes. Typically you try to keep that under control . . . , but yes, that has happened." (Doc. 21-4 at 2). Although the Plaintiff asks this Court to infer that the leak of the promotion decision

is probative of the preselection hypothesis, this again would require the Court—without supporting evidence—to speculate that ulterior discriminatory reasons motivated the promotion decision. However, this speculation does not demonstrate that the Defendant's reasons for not promoting the Plaintiff are pretext for race discrimination.

iv.    Lack of previous African American supervisors

Finally, the Plaintiff states that all her supervisors have been white. She argues that this fact, taken with the others, would allow for a reasonable jury to find that the Defendant's proffered reason for its promotion decision is pretext. In reply, the Defendant argues that the allegation that the Plaintiff only had white supervisors is insufficiently supported by evidence to support pretext for discrimination. (Doc. 25 at 15).

The Eleventh Circuit has explained that statistical evidence without any other relevant information is not probative of pretext. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). Namely, the Eleventh Circuit has explained that statistical evidence is not relevant to discriminatory intent without evidence "as to how many blacks applied and were rejected and evidence of the success rate of equally qualified white applicants." *Howard v. BP Oil Co.*, 32 F.3d 520, 524 (11th Cir. 1994). And statistical evidence without this analytic foundation is "virtually meaningless*." Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 963 (11th Cir. 1997) (citing *Brown v. American Honda Motor Co.,* 939 F.2d 946, 952–53 (11th Cir.), *cert. denied,* 502 U.S. 1058 (1992)).

Because the Plaintiff does not provide any relevant information as to the numbers of African Americans that applied, were rejected, and the corresponding white promotion rate for a management position, the fact that none of the Plaintiff's supervisors over her

18

past six years in Department 6 were African American is "virtually meaningless." Therefore, this statistical evidence is not probative as to pretext or discriminatory animus.

\* \* \*

Because none of these instances make the Defendant's proffered reason not worthy or credence or are indicative of racial animus, they do not show that the Defendant's reason for making its promotion decision is pretextual.

III.    Qualifications of the Plaintiff compared to Campbell

The Plaintiff argues that she was more qualified for the Department 6 lead person role because she had worked in the department for at least five years, observed the former lead person perform her job, and was better equipped physically to push orders in the department. She also says that Campbell's lack of knowledge of the department created inefficiencies that required the Plaintiff to assist Campbell. (Doc. 23 at 36).  In light of the other identified evidence of pretext, the Plaintiff argues that "the disparity [between qualifications] need not be so dramatic to support an inference of pretext." (*Id*. at 37) (citing *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005)).

The Defendant replies that the Plaintiff's argument that she was more qualified than Campbell represents the Plaintiff substituting her preferred selection criteria for the criteria chosen by the employer. (Doc. 25 at 8).  And she cannot create an issue of material fact by second guessing the wisdom of the employment decision. (*Id*.).

As mentioned above, an employee "is not allowed to recast an employer's proffered non-discriminatory reasons or substitute his business judgment for that of the employer." *Chapman*, 229 F.3d at 1030.  And an employee can "not establish that an employer's

proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where . . . the reason is one that might motivate a reasonable employer." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir. 1997). Indeed, "a plaintiff cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the person who received the position [s]he coveted." *Kidd v. Mando Am. Corp.,* 731 F.3d 1196, 1206 (11th Cir. 2013). Only when an employee "can show that the disparities between the successful applicant's and [her] own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff" can an employee show pretext. *Id.*

Here, the Plaintiff is unable to meet this burden. The Plaintiff argues that she had more relevant experience by working in Department 6 longer. But, this does not illustrate such a stark disparity between Campbell—who had five years of lead experience—and Mason—who had none—that no reasonable person would have chosen Campbell to be the lead person in Department 6. Although the Plaintiff argues that when combined with other evidence the disparity in qualification does not have to be so stark, *see Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 772 (11th Cir. 2005), there still must be *some* disparity between the successful and arguably less qualified candidate and the plaintiff. *Bass v. Bd. of Cty. Comm'rs, Orange Cty., Fla.*, 256 F.3d 1095, 1107 (11th Cir. 2001) ("Hiring a less qualified person can support an inference of discriminatory motivation."). But here, even assuming that the Plaintiff could combine this disparity with other evidence and viewing the facts in the light most favorable to the Plaintiff, she has not shown Campbell was less qualified to be the lead person in Department 6. Therefore, the Plaintiff's argument that

she was more qualified than Campbell to be lead person is more quibbling with the wisdom of the employment decision than evidence of intentional discrimination.

### 2. *Convincing Mosaic of Circumstantial Evidence*

In the alternative, if she is unable to prevail under the *McDonald Douglas* burden shifting standard, the Plaintiff argues that she can show intentional discrimination through a convincing mosaic of circumstantial evidence. Namely, she argues that the interview process was a sham and that Campbell was preselected for the position.

The Eleventh Circuit has explained that a plaintiff may still survive summary judgment by presenting enough circumstantial evidence of discriminatory intent to create a triable issue of fact for a jury. *Lockheed-Martin*, 644 F.3d at 1328. A plaintiff can show a convincing mosaic by pointing to "(1) suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis II*, 934 F.3d at 1185.

Because the Court has already determined that the Plaintiff fails to show that Defendant's legitimate non-discriminatory reason is pretext for discrimination, the Court will consider whether the Plaintiff can assemble a convincing mosaic based on "suspicious timing, ambiguous statements . . . and other bits and pieces from the inference of discriminatory intent might be drawn" and "systematically better treatment of similarly situated employees."

### a. Suspicious Timing and Other Bits and Pieces of Discriminatory Intent

The Plaintiff argues that irregularities in the hiring process combined with the delays are bits and pieces "from which an inference of discriminatory intent might be drawn." The Plaintiff argues that the following circumstantial evidence supports a finding of discriminatory intent: (1) her interview felt like a sham—even though she had experience in Department 6; (2) the interview process was "oddly delayed," which she argues could mean that they were waiting for the right candidate or they had already made up their minds; (3) she watched Campbell train her replacement before her job was even posted; (4) the leaking of news of Campbell's promotion; (5) consideration of MacPac; and (6) Campbell's alleged lack of knowledge about Department 6 and resulting inefficiency. (Doc. 23 at 38–40).

In response to the Plaintiff's contention that the interview process was oddly delayed, the Defendant notes that Campbell applied within the standard application window, so the Defendant was not waiting for the "right" candidate to apply. (Doc. 25 at 13).  Although the Plaintiff argues that white employees were systematically favored in promotions and training opportunities, she fails to present sufficient evidence to support her position.  Instead, the bits and pieces of evidence that she identifies as supporting a convincing mosaic of circumstantial evidence do nothing to create the inference of a nexus between the promotion decision and racial animus against Mason.  General statements about employment opportunities going to white employees are insufficient for a reasonable

jury to infer that the Defendant's true reason for not promoting the Plaintiff was because she was African American.

### b.  Systematically better treatment of similarly situated employees

Plaintiff asserts that white employees were treated more favorably than African American employees in terms of advancement opportunities.  To support the claim that white employees were systematically better treated, the Plaintiff states, "Mason and her co-worker Jones also presented evidence of systematically better treatment in both the promotion process and the receipt of informal training for higher-level positions for supervisors, which Plaintiff argues is directly related to promotions." (Doc. 23 at 40).

Here, the Plaintiff is only able to muster a generalized allegation that the Defendant systematically treated white employees better.  Both the Plaintiff's deposition testimony and Jones' declaration contain non-specific statements that the Defendant treated African American employees differently than white employees. (Docs. 24-2; 21-1 at 36).[3]

---

[3] The Plaintiff testified that someone told her the reason she didn't get the job was because she was African American.  (Doc. 21-1 at 36).  Her testimony is as follows:

> Q. No one ever told you you weren't getting the job because you were a black woman, correct?
> A. Someone had said that was the reason why I didn't get the job.
> Q. I know you said that. Who are you saying told you that?
> A. Another employee.
> Q. Who's that employee?
> A. Natalie Gilbert.
> Q. What did Natalie Gilbert tell you?
>  A. She told me for years she has known that any black person that has ever signed up for a job would never get the job because they don't want a black person to have that job.
> Q. When did you have this conversation with Natalie Gilbert?
> A. I don't recall the time I had the conversation with her, but it was said.
> Q. Did Natalie Gilbert say she specifically had a conversation with someone with Alex Dowling or Crystal Sizemore or Hannah McKee or Terry Harrison about this subjects?

Relying on the Eleventh Circuit's precedent in *Lockheed-Martin*, 644 F.3d at 1328, courts have rejected nonspecific and generalized complaints that white people received better treatment compared to African Americans as a means to show a convincing mosaic. *Zachery v. Coosa Cty. Bd. of Educ.*, 2021 WL 359731, at *8 (M.D. Ala. Feb. 2, 2021) (explaining claims that a school board disproportionately employs more white teachers than African American teachers and one example where a African American teacher was

---

A. No. She didn't specifically say she had a conversation with any one them.
Q. Did she say anybody in management had specifically told her that?
A. Pretty much she did.
Q. Who did she say in management had told her that?
A. I don't recall the name, but she did say.
Q. Could you pick this person out of a lineup or you don't know who they are?
A. I don't know names, so I wouldn't be able to put a face with a person. I don't know who they are.
Q. What job was this person in that allegedly said this?
A. I don't know.
Q. Was he a member of management?
A. I would have to assume so.
Q. What job -- you don't know what job they're in?
A. I don't.
Q. Were they working on the production floor?
A. I don't know.
Q. What department were they in?
A. I don't know.

(Doc. 21-1 at 36).

Similar to the reason the Court considers Jones' statement to be hearsay as explained in footnote 2, the Court finds that the Plaintiff's testimony is impermissible hearsay because it is not reducible to a non-hearsay form. This is double hearsay because the out of court statement was not what Gilbert told the Plaintiff but what someone else told Gilbert who told the Plaintiff. The Plaintiff's complete lack of knowledge of who might have told Gilbert—after repeated questions to elicit some indication of the person's identity—would require the Court to speculate that some unknown person could substantiate the testimony. The Eleventh Circuit has prohibited this very exercise. *See Jones* 683 F.3d at 1294. Further, the Plaintiff testified that the alleged unknown person who told Gilbert that the Plaintiff was not hired because she was African American was not of one of the decisions makers involved in the promotion, so it adds little to her argument that the Plaintiff was not promoted because of her race. Therefore, the Court does not credit the Plaintiff's testimony about being told her race had some bearing on the employment decision.

treated harsher than a white teacher were "flimsy evidence of discrimination") (citing *Moultrie v. Georgia Dep't of Corr.*, 703 F. App'x 900, 907 (11th Cir. 2017)).  Therefore, the Plaintiff fails to present sufficient evidence to show that there was systematically different treatment of white and African American employees for it to be a tile in a convincing mosaic of circumstantial evidence of racial animus.

* * *

Because the Plaintiff is unable to show that "suspicious timing . . . and other bits and pieces from which an inference of discriminatory intent might be drawn, systematically better treatment of similarly situated employees, or that the employer's justification is pretextual," the Plaintiff is unable to assemble a convincing mosaic of circumstantial evidence from which a reasonable jury could infer discriminatory intent on behalf of the Defendant.   Therefore, her failure to promote claim is due to be dismissed.

## B.  Failure to Train Claim

The Plaintiff also claims that Ruskin racially discriminated against her in terms of training opportunities.   The Plaintiff clarifies that by training she means informal on-the-job training by higher-level employees. (Doc. 23 at 41–42).  Specifically, she argues that McKee and Campbell had received informal training in how to perform lead person duties before being promoted. (*Id*. at 42).   Namely, the Plaintiff argues that she was not afforded the opportunity for one-on-one training from higher-level employees, and therefore, this impacted her opportunity for advancement. (*Id*. at 43).

In order to establish a *prima facie* case for discriminatory failure to train, the Plaintiff must show that she was a qualified member of a protected class and was subjected

to an adverse employment action in contrast with similarly situated employees outside the protected class. The Defendant challenges that the informal training constitutes or led to an adverse employment action.

An employee can establish an "adverse employment action" by proving that a decision of the employer "impact[ed] the terms, conditions, or privileges of [her] job in a real and demonstrable way." *Jefferson v. Sewon Am., Inc.,* 891 F.3d 911, 920–21 (11th Cir. 2018) (citing *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001)). Further, the plaintiff must establish the denial of training caused her to "suffer[ ] an adverse employment action." *Gaines v. Johnson*, 44 F.Supp.3d 1169, 1180 (2014) (citing *Mack v. ST Mobile Aerospace Eng'g, Inc.,* 195 Fed. Appx. 829, 845 (11th Cir. 2006)).  For example, district courts have found that a plaintiff must do more than "identify[ ] the fact that she was denied such training," she must state "how, or even if, that denial affected her salary, title, position, or job duties. The denial of training, without more, does not constitute an adverse employment action." *Fitzhugh v. Topetzes*, 2006 WL 2557921, at *7 (N.D. Ga. Sept. 1, 2006).

Here, the Plaintiff's failure to train claim fails because she does not provide any evidence that she was denied one of these informal training opportunities or that the examples she points to where white employees allegedly received these opportunities resulted in harm to her.  Although the Plaintiff points to several instances where white coworkers were asked to perform some lead person responsibilities, she does not demonstrate that these alleged training opportunities resulted in those employees receiving promotion opportunities that the Plaintiff was not provided.  Although the Plaintiff argues

that she was not promoted to the lead person position because she lacked these informal training opportunities, this too is not indicative of an adverse employment action because Campbell was hired because of her lead person *experience* and not that she had been informally trained to do the role without other experience.  Further, the Plaintiff was ultimately hired to be a lead person without any of the informal training that she argues prevented her from being promoted in the first instance.  Because the Plaintiff has failed to show denial of training opportunities or how these alleged informal training or lead person tasks had "a tangible adverse effect on the plaintiff's employment" or "impact[ed] the terms, conditions, or privileges of [her] job in a real and demonstrable way," *Jefferson,* 891 F.3d at 921, she cannot show that she was subject to adverse employment decision and, therefore, is unable to make out a *prima facie* case for disparate treatment in her training. Therefore, her failure to train claim is due to be dismissed.

## VI.    CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Defendant's Motion for Summary Judgment, (doc. 19), is GRANTED.

2.  Final judgment will be entered in favor of the Defendant and against the Plaintiff.

DONE this 29th day of July, 2021.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE